**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

ACRISURE OF CALIFORNIA, LLC and
ACRISURE, LLC,

              Plaintiffs,

v.

ADAM DEVONE,

              Defendant.

Case No. 1:26-cv-01502

Hon.

---

## <u>COMPLAINT</u>

---

Plaintiffs Acrisure of California, LLC ("Acrisure of California") and Acrisure LLC (together with Acrisure of California, "Acrisure"), by and through their attorneys Skadden, Arps, Slate, Meagher & Flom LLP and Warner Norcross + Judd LLP, state their Complaint against Defendant Adam DeVone ("DeVone"), upon personal knowledge with respect to Acrisure and its own acts, and upon information and belief as to all other matters, as follows:

### <u>NATURE OF ACTION</u>

1.      This action concerns Defendant DeVone's unlawful use of the distinctive and valuable "BXA" name and associated trademarks (the "BXA Marks") in an attempt to steal back a company that DeVone sold to Acrisure and for which Acrisure paid millions of dollars.

2.      In October 2016, Acrisure purchased from DeVone and other owners the assets and operations of the insurance brokerage business Benefits Exchange Alliance, Inc. ("Benefits Exchange Alliance"), which was then doing business as BXA Insurance Services ("BXA").  As part of the multi-million dollar transaction, Acrisure purchased all rights, including trademark rights, to the names and brands "Benefits Exchange Alliance" and "BXA Insurance Services,"

including derivatives thereof (*e.g.*, "BXA"-formative names and marks), as well as internet domains that contained iterations of those marks, such as BenefitsExchangeAlliance.com, BenefitsXchangeAlliance.com, BenXAll.com, BenXAlliance.com, BXAInsuranceServices.com, and BXAll.com.  Since acquiring the assets, operations, and intellectual property of BXA, Acrisure has continuously used the BXA Marks and BXA branding in commerce to market and provide insurance brokerage and related services to its customers.

3.      For several years after the deal, DeVone was a highly compensated Acrisure employee in the Acrisure BXA group.  Most recently, DeVone worked with Acrisure as an independent contractor.  DeVone was paid more than one million dollars for his consulting services.  Earlier this year, DeVone began unlawfully using Acrisure resources—including Acrisure's employees, physical property, and intellectual property—to effectively steal back BXA by creating a "new" directly competing company, which DeVone unlawfully named BXA Global Insurance Services, Inc., referred to herein as "NEWCo BXA."

4.      This week, on Monday, May 4, 2026, DeVone informed Acrisure that approximately 50 Acrisure customers had, according to DeVone, "chosen [NEWCo BXA] to represent them as their broker" and requested that Acrisure transfer those customers to NEWCo BXA, using the following name and logo:



5.      Yesterday, on May 6, 2026, Acrisure learned that DeVone and those working in concert with him were emailing Acrisure's BXA customers—while improperly using the "BXA

Global" name and logo—directly and confusingly reporting that BXA was required to execute certain documents "immediately in order to have carrier access and continue servicing" because of the "change of [] name back to BXA (BXA Global)" and separation of BXA from Acrisure.

6.      Yesterday, on May 6, 2026, DeVone requested that Acrisure execute certain documents for another five Acrisure customers to transfer their services to NEWCo BXA.

7.      Yesterday, on May 6, 2026, DeVone left a voicemail with an Acrisure employee in which he held himself out as "calling from BXA Global."

8.      DeVone is of course free to venture back out on his own and attempt to compete in the same marketplace as Acrisure, but he must do so fairly and lawfully.

9.      DeVone is actively infringing upon Acrisure's BXA Marks and breaching voluntarily assumed contractual obligations to Acrisure.  DeVone has, at the very least, (a) willfully infringed Acrisure's intellectual property and engaged in unfair competition; and (b) thereby breached the Asset Purchase Agreement, dated August 3, 2016, entered into by DeVone and Acrisure of California, among others, (the "Asset Purchase Agreement") and the Consulting Agreement, dated August 18, 2022, entered into by DeVone and Acrisure of California (the "Consulting Agreement")

10.     Acrisure has suffered, and will continue to suffer, irreparable harm as a result of DeVone's unlawful conduct unless and until DeVone is enjoined from infringing Acrisure's valuable BXA Marks and using Acrisure's proprietary information for his own ends.

## PARTIES

11.     Plaintiff Acrisure, LLC is a Michigan limited liability company and its sole member is Acrisure Intermediate, Inc.  Acrisure Intermediate, Inc. is a Delaware corporation with its principal place of business in Michigan.  Acrisure, LLC is a citizen of Delaware and Michigan.

3

12.    Plaintiff Acrisure of California, LLC is a limited liability company with its principal place of business in Michigan.  Acrisure of California, LLC is a Michigan limited liability company and its sole member is Acrisure, LLC.  Acrisure of California, LLC is a citizen of Delaware and Michigan.

13.    Defendant Adam DeVone is an individual who, upon information and belief, is a citizen of California.

## JURISDICTION AND VENUE

14.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1221, 28 U.S.C. § 1338(a) and 28 U.S.C. § 1338(b) because this is a matter arising under the Lanham Act, 15 U.S.C. § 1051, *et seq*.  The Court has subject matter jurisdiction over Acrisure's state-law claims pursuant to 28 U.S.C. § 1367 because the state-law claims arise from a common nucleus of operative facts as the Lanham Act claims.

15.    The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  DeVone is a citizen of California.  Plaintiffs Acrisure, LLC and Acrisure of California, LLC are both citizens of Michigan and Delaware.

16.    This Court has personal jurisdiction over Defendant DeVone because DeVone expressly consented to personal jurisdiction in this Court pursuant to Section 11 of the Consulting Agreement.  In addition, DeVone's intentional acts at issue in this Complaint were intentionally aimed at Michigan and caused injury to Plaintiffs in Michigan.  DeVone has sufficient minimum contacts with Michigan and otherwise purposefully availed himself of the benefits of this State in conducting his business, thereby rendering the exercise of jurisdiction by Michigan courts permissible under traditional notions of fair play and substantial justice.

17.     Venue in this district is proper pursuant to 28 U.S.C. § 1391.  Venue in this district also is proper because DeVone agreed in Section 11 of the Consulting Agreement that any action concerning any dispute arising under the Consulting Agreement shall be filed only in Michigan.

18.     In Section 11 of the Consulting Agreement, DeVone agreed that the Consulting Agreement "shall be governed, construed, interpreted, and enforced in accordance with the domestic laws of the State of Michigan without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application of the laws of any other jurisdiction other than the State of Michigan." DeVone further agreed that "[a]ny and all actions concerning any dispute arising hereunder shall be filed and maintained only in the State of Michigan."

19.     In Section 7.14 of the Asset Purchase Agreement, DeVone agreed that the Asset Purchase Agreement "shall be governed, construed, interpreted and enforced in accordance with the domestic laws of the State of Michigan, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application hereto of the laws of any other jurisdiction other than the State of Michigan."

20.     In Section 7.14 of the Asset Purchase Agreement, DeVone also agreed that "[a]ny controversy or claim arising out of or relating to this Agreement, other than as provided in Section 6.7, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  Any such controversy or claim shall be arbitrated on an individual basis and shall not be consolidated in any arbitration with any claim or controversy of any other party.  Any arbitration shall be conducted in Grand Rapids,

Michigan.  In the event of arbitration, the non-prevailing party shall bear all related costs, including the prevailing party's reasonable attorney fees.  The parties agree that any court of competent jurisdiction may render judgment on and enforce any arbitration award.  Either party may seek any interim or preliminary relief, necessary to protect its rights or property pending the completion of arbitration, in a court of competent jurisdiction."

## FACTUAL BACKGROUND

**Acrisure Is A Global Fintech Leader**
**Providing Financial Services In The Insurance Brokerage Industry**

21.    Acrisure is a global fintech leader based in Grand Rapids, Michigan, that provides intelligence-driven financial services solutions across many industries, including the insurance brokerage industry.  Acrisure has offices throughout the United States.

22.    The insurance brokerage industry is highly competitive in terms of maintaining customers and accounts, making the marketing of an insurance brokerage services critical to success.

23.    Acrisure spends significant time and money developing and maintaining its brokerage footprint, including through its agency, brand and affiliate names (such as BXA Insurance Services).  Acrisure's ability to help customers address their unique needs begins with accurate product representation, firm reputation, and goodwill to anchor their business relationships with Acrisure.

24.    Acrisure makes significant investments to acquire, build, and maintain its image and reputation with its customer base and customer relationships, including its goodwill, business reputation, and brand.

25.    Acrisure protects its goodwill, reputation, and brand recognition by developing and maintaining a consistent public-facing image, such that when customers see or hear the name

Acrisure or any of its agencies (such as BXA Insurance Services), the customers and Acrisure alike expect consistent, first-class, and tailored services to meet their needs.  Acrisure reasonably enforces its exclusive rights to its proprietary information and trademarks through covenants in all its agreements with employees and independent consultants.

**In 2016, DeVone Sold Benefits Exchange Alliance's Operations And Assets, Including Its Name, Business, And Goodwill To Acrisure For Millions Of Dollars**

26.     In 2016, DeVone and other owners of Benefits Exchange Alliance sold substantially all of Benefits Exchange Alliance's operations and assets, as well as all related goodwill, to Acrisure for millions of dollars in up-front consideration, plus additional potential earn-out compensation.

27.     On October 3, 2016, DeVone, Benefits Exchange Alliance's other owners, and Acrisure of California entered into the Asset Purchase Agreement, which was made effective October 1, 2016.

28.     Pursuant to the Asset Purchase Agreement, Acrisure purchased, for fair consideration, substantially all of Benefits Exchange Alliance's assets, including all rights in and to the BXA name and the BXA Marks.

29.     As set forth in Section 1.1 of the Asset Purchase Agreement, DeVone and the other sellers (none of whom are parties to this litigation), sold to Acrisure:

(a)     "All intellectual property and software used to operate the Business, including, without limitation, the Proprietary Rights and other items set forth on Schedule 1.1(g)" (*id.* § 1.1(g)); and

(b)     "all rights to the names 'Benefits Exchange Alliance,' 'BXA Insurance Services,' 'Pension & Benefit Insurance Services' and derivatives thereof, and all goodwill and going concern value associated with the Business" (*id.* § 1.1(i)).

30.     The Proprietary Rights and other items set forth on Schedule 1.1(g) of the Asset Purchase Agreement that were sold to Acrisure included, among other things, the BXA Marks,

including "BXA" formative names and marks, as well as a number of internet domains that

contained derivatives of those marks, including BenefitExchangeAlliance.com,

BenefitsExchangeAlliance.com, BenefitsXchangeAlliance.com, BenXAll.com,

BenXAlliance.com, BXAInsuranceServices.com, and BXAll.com.

31.     In addition to BXA's intellectual property, DeVone also sold the following to

Acrisure:

(a)     "All rights in all insurance policy accounts of the Business (collectively, 'Accounts'), a complete list of which, broken down by customer, including, without limitation, insurance renewal date data and the Receivables related thereto, all as of the Effective Date, is set forth in Schedule 1.1(a), and all client prospect records and existing customer account records related to such Accounts, and all information in Seller's possession as to each of these items, whether in electronic form or otherwise, including underwriting, files, and all other related information;" (Asset Purchase Agreement, § 1.1(a)); and

(b)     "All right, title, and interest in and to all of the following to the extent that they relate to the Business: mailing lists, customer lists, vendor lists and data, marketing information, and procedures, sales and customer files, advertising and promotional materials, current product material, equipment maintenance records, warranty information, standard forms of documents, manuals of business procedures and other similar procedures, and all other information of Seller relating to the Business;" (*id.* § 1.1(k)).

32.     "Business" is defined in the Asset Purchase Agreement as "the business of

providing insurance brokerage and related services and products."  (*Id.* Paragraph A).

33.     In addition, DeVone, as an Owner, sold to Acrisure his Personal Goodwill, which

as defined included his "close business relationships, goodwill, knowledge and other information

related thereto used in connection with the Business which were independently developed

through such Owner's personal ability, personality, reputation, skill and integrity."  (*Id.*)

34.     Recognizing that following the sale Acrisure would own and have exclusive

rights to the BXA Marks, and that any use of BXA Marks by DeVone, other sellers, or any

entities affiliated therewith would cause confusion (and deprive Acrisure of the full value of the

8

rights for which Acrisure paid handsomely), DeVone and the other sellers also acknowledged that they must remove "BXA" from the legal name of entities that were not being sold to Acrisure.  For example, pursuant to Section 5.12 of the Asset Purchase Agreement, DeVone and the other sellers expressly covenanted and agreed that they would not only "cease all involvement" with BXA, LLC (defined as "BXA Arizona"), an Arizona entity whose assets were not included in the sale, but also "cause BXA Arizona to remove 'BXA' from its legal name and otherwise change its legal name to one sufficiently dissimilar to [BXA, LLC] (in [Acrisure of California's] judgment) to avoid confusion."  (*Id*. § 5.12.)

35.    In short, the BXA Marks became the exclusive property of Acrisure in 2016, and neither DeVone nor any of the other sellers retained (or ever claimed) any title or rights to use or exploit those marks in any manner for themselves.

**DeVone Worked As A Highly Compensated<br>Acrisure Consultant Pursuant To The Consulting Agreement**

36.    In connection with the sale of BXA to Acrisure, DeVone entered into an employment agreement ("Employment Agreement") with Acrisure and worked for Acrisure as a highly compensated executive for many years.

37.    On August 18, 2022, DeVone and Acrisure of California entered into another agreement, this time a Consulting Agreement.  The Consulting Agreement superseded the Employment Agreement.

38.    Pursuant to the Consulting Agreement, DeVone agreed to provide Acrisure with certain Services, which included advisory and consulting services, as well as other services reasonably requested by Acrisure "to assist in the orderly transition of the management of [Acrisure of California's] BXA Insurance Services Agency Operation, including the transition of leadership of the Agency, key customers and key accounts of the Agency, insurance market

relationships important to the ongoing success of the Agency, and thereafter for referral services." (Consulting Agreement, § 1.)  DeVone agreed to provide such services until the Consulting Agreement was terminated.  (Consulting Agreement, § 2.)

39.     Acrisure agreed to pay DeVone a monthly fee as well as referral fees for any new business that DeVone referred to Acrisure of California or its Affiliates.

40.     Pursuant to the Consulting Agreement, DeVone agreed that "[a]ll work product resulting from, related to or conceived in connection with [DeVone's] performance of the Services under this Agreement shall be the exclusive and proprietary information of [Acrisure of California]." (*Id.* § 7.)

41.     DeVone acknowledged that he "may develop other information that [Acrisure of California] considers Confidential Information." (*Id.* § 6.)

42.     On March 20, 2026, Acrisure sent DeVone written notice that it was terminating the Consulting Agreement.  The Consulting Agreement termination was effective April 1, 2026.

<u>**Acrisure Invested In, Developed And Used The BXA Marks**</u>

43.     Since 2016, Acrisure invested in, developed, and continuously held itself out as providing insurance brokerage and consulting services under "BXA" and "BXA" formative names and branding, including the BXA Marks, in all of the traditional channels of trade in which such services are offered, including online and through professional social media platforms.

44.     After Acrisure acquired the assets of BXA, Acrisure invested significant time, money, and effort to integrate BXA customers and employees into Acrisure of California.

45.     Acrisure uses the BXA Marks and BXA branding in commerce to provide services to Acrisure's existing customers, including on insurance quotes, presentations, and benefits guides intended for customers' employees.

46.     Acrisure uses the BXA Marks and BXA branding in commerce to advertise its services to propective customers, including online and through prospective customer reach-outs.

47.     As a result, the BXA Marks and branding are highly distinctive and have become closely associated with Acrisure as a source of high-quality and reputable services.

48.     Acrisure intends to continue to operate BXA as group within Acrisure and to continue using the BXA Marks.

49.     Acrisure uses logos that promiently feature the "BXA" initials:



50.     "BXA Insurance Services" is one of the approved "doing business as" names included in Acrisure of California's insurance license from the California Department of Insurance.

51.     Acrisure uses the "BXA" name in the signage at Acrisure's office location in Lake Forest, California.

52.     When Acrisure employees in the BXA group communicate with customers and others, their email signature blocks identify their company as "Acrisure of California, LLC DBA Benefits Exchange Alliance (BXA)."

53.     Acrisure employees in the BXA group use @bxall.com email accounts to communicate with Acrisure customers, prospective customers and other third parties.

54.     Acrisure maintains the domain www.BXAll.com, which redirects to www.Acrisure.com/southwest/.

55.     Acrisure maintains a LinkedIn profile for its BXA group that uses the BXA

Marks and branding:



56.     The BXA Marks represent valuable goodwill that belongs exclusively to Acrisure.

**DeVone Unlawfully Developed NEWCo BXA Using Acrisure's
Proprietary Information And Has Infringed Upon The BXA Marks In Commerce**

57.     Acrisure recently learned that while DeVone was ostensibly providing consulting

services to Acrisure pursuant to the Consulting Agreement (and being paid for doing so), DeVone

12

was secretly and unlawfully using Acrisure resources to develop and launch a competing insurance brokerage company.

58.    DeVone named that competing new company "BXA Global Insurance Services" (NEWCo BXA), a name that literally uses the same letters that Acrisure uses today and that DeVone sold to Acrisure nearly ten years ago.

59.    NEWCo BXA is a direct competitor of Acrisure and purports to provide the same services to the same prospective customers.

60.    DeVone worked with Acrisure employees to create NEWCo BXA using Acrisure's computer network, Acrisure email addresses, and Acrisure's licensed software and held in-person meetings at Acrisure's offices using Acrisure's resources for his own benefit, including by diverting the time and attention of Acrisure's employees from Acrisure's business.

61.    For example, Acrisure has learned that, on March 8, 2026, DeVone instructed several Acrisure employees and consultants that "Guys we need to work on the formations of NEWCo this week."  DeVone listed his proposed priorities as follows: "1. Website Tech overlay; 2. Leave behinds; [and] 3. Logo Design."  DeVone instructed the group to "meet this week in the office"—Acrisure's office that Acrisure pays for—to discuss what derivative of the BXA Mark to use for DeVone's NEWCo.  DeVone proposed "We can be BXAOC or BXAGLOBAL, BXAUSA."

62.    An Acrisure employee shared multiple draft logos for the NEWCo BXA that prominently featured "BXA."

63.    After DeVone provided additional comments, the Acrisure employee responded with revised proposals for the NEWCo BXA logo depicted below and DeVone replied, "I like this."



64.     DeVone and the Acrisure employees and consultants, using Acrisure email accounts, also reviewed and commented on drafts of the NEWCo BXA Website that used derivatives of the BXA Marks.  Each of the proposed marks prominently featured "BXA."

65.     The logo ultimately used by DeVone, including on the NEWCo BXA Website, prominently features "BXA":



66.     Acrisure would later learn that on March 25, 2026, DeVone, as incorporator, registered the corporation BxaGlobal Insurance Services, Inc. with the State of California Office of the Secretary of State.  The NEWCo BXA Articles of Incorporation, which are signed by DeVone and filed with the State of California, state "[t]he business of the corporation is to be an insurer."

67.     Upon information and belief, DeVone, or someone working on his behalf or at his direction, used a third-party service, Domains by Proxy, LLC, to register the domain names BXAGlobal.com, BXAusa.com and BXAoc.com to conceal the registrant's identity.

68.     The BXAGlobal.com domain name directs to a website that is live and publicly accesible (the "NEWCo BXA Website").

14

69.     The NEWCo BXA Website includes a BXAGlobal logo that prominently displays "BXA."  It advertises BXAGlobal as "not your everyday broker," and provides a link for visitors to "contact" NEWCo BXA:



70.     The description of what makes NEWCo "BXA different from other benefit brokers" in the NEWCo BXA Website is similar to the description provided on Acrisure's LinkedIn profile for BXA.  The NEWCo BXA Website states that "Most brokers show up at renewal time, pass along whatever the carrier sends, and disappear.  BXA works differently.  We use a proactive 8-step renewal methodology that starts months before your renewal date."  Acrisure's LinkedIn profile for BXA notes that "BXA doesn't run and hide when it's time to negotiate renewals" and BXA takes a "proactive approach to the negotiation process long before it comes time for renewal."

71.     The NEWCo BXA Website also contains several "client testimonials," despite NEWCo BXA having been only recently registered as a company.

15

72.     Upon information and belief, those client testimonials, if not entirely fictional, are necessarily from customers of Acrisure's BXA that were speaking about the quality services they received from Acrisure's BXA.

73.     For example, one of those client testimonials appears to reference previous insurance renewal seasons as being the "smoothest part of the year" after "switch[ing] to BXA":

> **"**
>
> We switched to BXA after years of our old broker just passing along whatever the carrier sent. The difference was night and day —proactive strategy, a dedicated team that actually picks up the phone, and a benefits platform our employees love. Renewal season used to be a nightmare; now it's the smoothest part of our year.

Upon information and belief, this testimonial refers to an Acrisure renewal done by Acrisure employees using an Acrisure benefits platform.

16

74.    Another "client testimonial" states that "BXA" "came in months before [their] renewal" to successfuly renegotiate rates, among other things:

> "
>
> BXA completely changed how we approach benefits. They came in months before our renewal, renegotiated our rates, and saved us over 18% without cutting a single benefit. Our employees actually understand their plans now thanks to the communications BXA put together. They feel like an extension of our HR team.

Upon information and belief, this testimonial refers to an Acrisure renewal done by Acrisure employees and communications prepared by Acrisure employees.

75.    The NEWCo BXA Website also advertises that NEWCo BXA works with "first-time group plans to Fortune 500 strategy."  That language is similar to the description provided on Acrisure's LinkedIn profile for BXA, which states that BXA provides services and solutions "whether you're a start-up or a Fortune 500 company."

**This Week, Acrisure Learned That DeVone Is**
**Actively Transferring Acrisure's BXA Customers To NEWCo BXA**

76.    On May 4, 2026, DeVone emailed Acrisure, informing Acrisure, for the first time, that forty-eight (48) Acrisure customers had purportedly "requested to be transferred to [NEWCo BXA]" and had "chosen [NEWCo BXA] to represent them as their broker."

77.    Insurance brokerages act as intermediaries between customers and insurance carriers, which provide the actual insurance.  Brokers locate and sell insurance to customers that need insurance.  The brokerage firm receives commissions from the insurance carrier for any

17

insurance placed with the brokerage's customers.  When a customer decides to change brokers, they sign a broker of record letter ("BOR") to the insurance carrier informing them that the customer's broker of record has changed.

78.     DeVone's May 4, 2026 email requested that Acrisure execute BORs and transfer each of the 48 identified Acrisure customers to NEWCo BXA for NEWCo BXA to "service the accounts without any interruption in client service."

79.     Yesterday, on May 6, 2026, Acrisure learned that DeVone and those working in concert with him were emailing Acrisure's BXA customers directly and confusingly reporting that a BOR was needed "immediately in order to have carrier access and continue servicing" because of the "change of [] name back to BXA (BXA Global)" and separation of BXA from Acrisure.

80.     Specifically, on May 4, 2026, former Acrisure employee Vanessa Garcia emailed an Acrisure customer from an @bxaglobal.com address to "share a recent change that has taken place."  Ms. Garcia stated, "[t]he same core group of people (service team and consultants) that were once BXA, have separated from Acrisure and have gone back to BXA (now "BXA Global")."  She added "[o]ur BXA 'team' never changed when we took on the Acrisure name for a few years, and now the team is dropping the Acrisure name and going back to the BXA Global brand.  Same people, same office, better resources to service our clients."

81.     Ms. Garcia then stated that "[w]ith the change of our name back to BXA (BXA Global), we need to file new broker of record letters with the carriers immediately in order to have carrier access and continue servicing" the customer and that she could "send the letters via Docusign tomorrow to make it easy."

82.     Yesterday, on May 6, 2026, DeVone requested that Acrisure execute BORs for another five Acrisure clients to transfer their services to NEWCo BXA.

83.     Yesterday, on May 6, 2026, DeVone left a voicemail with an Acrisure employee and stated he was "calling from BXA Global" to request the execution of BORs, confirming that DeVone is now acting on behalf of NEWCo BXA in commerce.

84.     Acrisure has also learned that DeVone and current Acrisure employees recently met with an Acrisure customer to discuss the renewal of the customer's insurance program. DeVone and the Acrisure employees presented the customer with a renewal packet that contained no company branding.

85.     DeVone and the current Acrisure employees informed the customer's representative that her company had 60 days to decide whether to move their business from Acrisure.  When the client representative expressed a desire to continue working with the customer's current BXA contact—an Acrisure employee who is not planning to join NEWCo BXA—DeVone pressured the representative to convince that Acrisure employee to leave Acrisure and join NEWCo BXA, promising the employee would receive a raise if that occurred.

### Acrisure Has Suffered And Will Continue To Suffer Irreparable Harm As A Result Of DeVone's Infringement On The BXA Marks

86.     Acrisure has invested time and resources to build BXA's reputation and goodwill associated with the BXA Marks, which Acrisure has continuously and exclusively used since acquiring BXA.  DeVone's infringement upon the BXA Marks has caused and will continue to cause consumer confusion, and lead Acrisure to lose control over that reputation and related goodwill.

87.     NEWCo BXA is a direct competitor of Acrisure in the insurance brokerage industry in the United States market.

88. Reputations and customer relationships in the insurance brokerage marketplace are cultivated over years and, once established, often last for extended periods.

89. DeVone has already requested for Acrisure to facilitate a transfer of services from Acrisure to NEWCo BXA for nearly 50 Acrisure customers.

90. DeVone's unauthorized and unlawful use of BXA Marks is likely to cause, has already caused, and will continue to cause confusion, mistake, and deception in the minds of consumers as to the source, origin, or affiliation of DeVone's services, including that they are associated or affiliated with Acrisure and BXA.

91. DeVone's use of the BXA Marks is intended to harm, and does harm, Acrisure in multiple ways, including irreparably by creating a substantial risk of consumer confusion and diminishing Acrisure's ability to control its reputation and consumer perception of their trustworthiness in the insurance brokerage marketplace.

92. DeVone is fully aware that Acrisure has the exclusive rights to the BXA Marks—because he sold those marks and all associated rights to Acrisure—but has nevertheless moved forward in his efforts to use the BXA Marks to develop NEWCo BXA.

93. DeVone has been advertising the services of NEWCo BXA through the NEWCo BXA Website and through, upon information and belief, customer reviews testimonials regarding the work of BXA (Acrisure), intentionally creating consumer confusion about the source of NEWCo BXA's services.

94. DeVone, in conjunction with other former Acrisure employees, has confusingly told Acrisure customers that NEWCo BXA is the same entity as Acrisure's BXA agency, just under a new name, which negatively impacts Acrisure's brand, reputation and customer relationships and goodwill.

95.    The harm caused by DeVone infringing the BXA Marks as well as his intimate knowledge of Acrisure's business being transferred to NEWCo BXA, a new but direct competitor, is difficult to quantify and irreparable.

96.    In Section 7.14 of the Asset Purchase Agreement, DeVone agreed that "[a]ny controversy or claim arising out of or relating to this Agreement," other than a claim for indemnification under Section 6.7, "shall be settled by binding arbitration" to be conducted in Grand Rapids, Michigan.  DeVone further agreed that "[e]ither party may seek any interim or preliminary relief, necessary to protect its rights or property pending the completion of arbitration, in a court of competent jurisdiction."

97.    Unless enjoined by the Court, Acrisure will continue to suffer irreparable harm due to DeVone's willful infringing conduct and contractual breaches.

<u>COUNT I</u>
**(Trademark Infringement–15 U.S.C. § 1125(a)(1)(A))**

98.    Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

99.    Since 2016, Acrisure has owned the BXA Marks, and all goodwill associated therewith.

100.    Since 2016 and through the present, Acrisure has used the BXA Marks in continuously and exclusively in commerce to identify itself and the source of its services, including insurance brokerage activities.

101.    By virtue of having used and continuing to use the BXA Marks in commerce, Acrisure has maintained trademark rights in those marks.

102.    The BXA Marks are distinctive and strong, and serve to identify Acrisure as the source of services provided under those marks.

103.    DeVone has used and is using the BXA Marks in connection with his own directly competing (but inferior) insurance business, NEWCo BXA, without Acrisure's consent, including in connection with his website (BXAGlobal.com), company name (BXA Global), and his recent request to begin transferring and servicing Acrisure's customers.

104.    DeVone's unauthorized and unlawful use of the BXA Marks is likely to cause, has already caused, and will continue to cause confusion, mistake, and deception in the minds of consumers as to the source, origin, or affiliation of DeVone's services, including that they are associated or affiliated with Acrisure and BXA.

105.    DeVone has acted with full knowledge that (i) he does not own—and in fact fully and expressly divested himself of—any and all rights to BXA Marks, (ii) Acrisure owns all title, interest, and rights to the BXA Marks, and (iii) his actions would cause confusion or mistake and deceive consumers.

106.    Accordingly, DeVone's actions and infringement constitute a willful violation of the Lanham Act.  Such a flagrant and knowing infringement constitutes an exceptional case warranting attorney's fees.

107.    As a result of DeVone's actions, Acrisure has suffered irreparable injury and, unless DeVone's infringement is enjoined by the Court, Acrisure will continue to suffer irreparable harm.  There is no adequate remedy at law for the harm caused by DeVone's infringing conduct.

**COUNT II**
**(False Designation of Origin/Unfair Competition–15 U.S.C. § 1125(a))**

108.    Acrisure repeats and realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

22

109.    Since 2016, Acrisure has owned the BXA Marks, and all goodwill associated therewith.

110.    Since 2016 and through the present, Acrisure has used the BXA Marks in commerce to identify itself and the source of its services, including insurance brokerage activities.

111.    By virtue of having used and continuing to use the BXA Marks in commerce, Acrisure has maintained trademark rights in those marks.

112.    The BXA Marks are distinctive and strong, and serve to identify Acrisure as the source of services provided under those marks.

113.    DeVone has used and is using the BXA Marks in connection with his own directly competing (but inferior) insurance business, NEWCo BXA, without Acrisure's consent, including in connection with his website (BXAGlobal.com), company name (BXA Global), and his recent request to begin transferring and servicing Acrisure's customers.

114.    DeVone's unauthorized and unlawful use of BXA Marks is likely to cause, has already caused, and will continue to cause confusion, mistake, and deception in the minds of consumers as to the source, origin, or affiliation of DeVone's services, including that they are associated or affiliated with Acrisure and BXA.

115.    DeVone has acted with full knowledge that (i) he does not own—and in fact fully and expressly divested himself of—any and all rights to BXA Marks, (ii) Acrisure owns all title, interest, and rights to the BXA Marks, and (iii) his actions would cause confusion or mistake and deceive consumers.  Accordingly, DeVone's actions and infringement constitute a willful violation of the Lanham Act.

23

116.    In addition to trademark infringement, DeVone's use of the BXA Marks constitutes a false designation of origin or false and misleading description or representation of goods and services in commerce, with knowledge of the falsity, which is likely to cause confusion, mistake, and deception, and in commercial advertising and promotion, misrepresents the nature, characteristics, qualities, and origin of DeVone's commercial activities.

117.    DeVone's activities, alleged herein, have a substantial economic effect on interstate commerce.

118.    As a result of DeVone's actions, Acrisure has suffered irreparable injury and, unless DeVone's infringement is enjoined by the Court, Acrisure will continue to suffer irreparable harm.  There is no adequate remedy at law for the harm caused by DeVone's infringing conduct.

## <u>COUNT III</u>
### (Breach of Contract–Asset Purchase Agreement)

119.    Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

120.    The Asset Purchase Agreement constitutes a valid, enforceable, and binding contract between Acrisure and DeVone, among others, pursuant to which DeVone and the other sellers sold Acrisure substantially all of the assets of Benefits Exchange Alliance, d/b/a BXA Insurance Services.  The Asset Purchase Agreement was made for valid consideration.

121.    Pursuant to the Asset Purchase Agreement, DeVone sold to Acrisure, and Acrisure purchased from DeVone, (i) all of Benefits Exchange Alliance's insurance policy accounts, (ii) all intellectual property used to operate Benefits Exchange Alliance's insurance brokerage business and related services and products, including, but not limited to, the BXA Marks, (iii) all rights to the names 'Benefits Exchange Alliance,' 'BXA Insurance Services,'

24

'Pension & Benefit Insurance Services' and derivatives thereof, (iv) all goodwill and going concern value associated with Benefits Exchange Alliance's insurance brokerage business and related services and products, (v) all information of Benefits Exchange Alliance relating to its insurance brokerage business and related services and products, and (vi) DeVone's personal goodwill.

122.    Acrisure performed its obligations under the Asset Purchase Agreement, including by paying DeVone millions of dollars in cash and stock.

123.    DeVone has breached and is continuing to breach the Asset Purchase Agreement by infringing on Acrisure's exclusive rights to the BXA name.

124.    With respect to DeVone's breaches of the Asset Purchase Agreement, Acrisure seeks only temporary injunctive relief pending the resolution of a forthcoming arbitration of DeVone's breaches of the Asset Purchase Agreement, to be commenced shortly in Grand Rapids, Michigan.  Specifically, Acrisure seeks to temporarily enjoin DeVone from violating Acrisure's exclusive rights to the BXA name.

125.    DeVone's breach has caused and will continue to directly and proximately cause Acrisure irreparable damage and injury, including to its competitive place in the insurance and risk management market and to its relationships with its customers, unless restrained and enjoined by this Court.  There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

## COUNT IV
### (Breach of Contract–Consulting Agreement)

126.    Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

127.    The Consulting Agreement constitutes a valid, enforceable, and binding contract between Acrisure and DeVone, which includes enforceable obligations that protect Acrisure's proprietary information.  The Consulting Agreement was made for valid consideration.

128.    In exchange for agreeing to these obligations, DeVone provided consulting services to Acrisure.

129.    Acrisure performed its obligations under the Consulting Agreement.

130.    The Consulting Agreement provides that, among other things, all work product resulting from, related to, or conceived in connection with DeVone's performance of the Services under the Consulting Agreement are the exclusive and proprietary information of Acrisure.

131.    DeVone breached his obligations under the Consulting Agreement by improperly accessing and/or using Acrisure's proprietary information, including the BXA name and BXA Marks as well as the NEWCo BXA name, for his own benefit outside the Services he was providing to Acrisure, in direct violation of the Consulting Agreement.

132.    Upon information and belief, DeVone intends to continue to breach his obligations under the Consulting Agreement by operating NEWCo BXA in commerce using Acrisure's proprietary BXA name and BXA Marks.

133.    DeVone's breach has caused and will continue to directly and proximately cause Acrisure irreparable damage and injury, including to its competitive place in the insurance and risk management market and to its relationships with its customers, unless restrained and enjoined by this Court.  There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

**RELIEF REQUESTED**

WHEREFORE, Acrisure requests that this Court enter the following relief:

A.    Enter a judgment in favor of Acrisure on all causes of action alleged herein;

B.    Preliminarily and permanently enjoin DeVone, and all persons in active concert or participation with him, from:

    (a)    using the BXA Marks, or any confusingly similar marks, including, without limitation, BXA Global Insurance Services, in connection with the provision of insurance brokerage or any related services;

    (b)    using any domain names or email addresses containing "BXA" or confusingly similar names or terms, including BXAGlobal.com and @bxaglobal.com, in connection with the provision of insurance brokerage or any related services;

    (c)    engaging in any activity that infringes Acrisure's rights in the BXA Marks;

    (d)    altering, deleting, or otherwise destroying any information relevant to these proceedings, including, without limitation, communication with any individual or entity, correspondence to DeVone's personal email accounts and/or text message or other messaging platforms, communications concerning Acrisure's and its Affiliates' Confidential Information, as those terms are defined and used in Paragraph 6 of the Consulting Agreement, or communications with Acrisure's employees; and

    (e)    any other injunctive relief that this Court deems just and proper.

C.    Issue an order requiring DeVone, and all persons in active concert or participation with him, to immediately return all work product resulting from, related to or conceived in connection with DeVone's performance of the Services under the Consultant Agreement, as those terms are defined and used in Paragraphs 1 and 7 of the Consulting Agreement, in DeVone's possession, custody or control to Acrisure, including all such documents stored electronically;

D.    Award Acrisure compensatory damages in an amount to be determined at trial;

27

E.   Award Acrisure all ill-gotten gains wrongfully obtained by DeVone as determined in accordance with a full and fair accounting thereof;

F.   Award Acrisure its actual costs, expenses, and attorney's fees incurred in this lawsuit; and

G.   Grant Acrisure such other and further relief as the Court deems just and proper.

Dated:  May 7, 2026

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:  */s/ Christopher G. Clark*

Christopher G. Clark (663455-MA)
Catherine A. Fisher (686163-MA)
Nicole D. Pacheco (703786-MA)
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
christopher.clark@skadden.com
catherine.fisher@skadden.com
nicole.pacheco@skadden.com

- and -

WARNER NORCROSS + JUDD LLP
Edward J. Bardelli (P53849)
150 Ottawa Avenue, Suite 1500
Grand Rapids, Michigan 49503
(616) 752-2000
ebardelli@wnj.com

*Attorneys for Plaintiffs*
*Acrisure of California, LLC*
*and Acrisure, LLC*